UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

MARIUS H. STAFFORD, #1046424

                Petitioner,

v.                                               Action No.  2:18cv348

HAROLD W. CLARKE,
*Director of the Virginia Department of Corrections,*

                Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is before the Court on Marius H. Stafford's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the motion to dismiss filed by respondent Harold W. Clarke, Director of the Virginia Department of Corrections ("respondent").  This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia.  For the following reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 9, be **GRANTED**, and the petition for a writ of habeas corpus, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## I.      STATEMENT OF THE CASE

The habeas petition in this matter asserts that Stafford is entitled to relief because his trial counsel was ineffective, due to counsel's failure to present evidence that Stafford had not been notified of his status as a habitual offender, which was an element of his felony habitual offender driving conviction. ECF No. 1 at 5–7.  Stafford is currently serving a sentence decided by order

on May 27, 2014, concerning two separate proceedings: the revocation of several previously suspended sentences, and a conviction for felony habitual offender driving. *Id.* at 1. The issue asserted in the habeas petition concerns the habitual offender driving case.

**A.   Stafford was convicted of felony habitual offender driving.**

A grand jury of the Circuit Court of the City of Chesapeake indicted Stafford for felony driving while a habitual offender on December 8, 2013, in violation of Va. Code Ann. § 46.2-357. *Commonwealth v. Stafford*, No. CR14-119 (Va. Cir. Ct. Feb. 4, 2014), CR14 R. at 14.[1] Stafford was arrested after causing a car accident on the date of the offense, and held in custody until his trial. *Id.* at 1, 6, 9, 13, 15–16.

The court held a bench trial on February 6, 2014, and found Stafford guilty of felony driving while a habitual offender.[2] *Id.* at 15. Stafford, through counsel, asserted in his opening

---

[1] "CR14 R." refers to the paper record in *Commonwealth v. Stafford*, CR14-119, received from the Circuit Court of the City of Chesapeake under cover letter dated October 15, 2018, and consecutively paginated from 1 through 204.

[2] Virginia Code Ann. § 46.2-357 makes it "unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle or self-propelled machinery or equipment on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect." Va. Code Ann. § 46.2-357(A). "[A]ny person found to be an habitual offender under this article, who is thereafter convicted of driving a motor vehicle or self-propelled machinery or equipment in the Commonwealth while the revocation determination is in effect, shall be punished" in one of several ways. Va. Code Ann. § 46.2-357(B). Felony-level punishment is prescribed in (B)(2) if "such driving of itself endangers the life, limb, or property of another" or the driving "takes place while such person is in violation" of enumerated DUI statutes and the person was previously convicted of violating those statutes. Va. Code Ann. § 46.2-357(B)(2). Felony punishment is also prescribed in (B)(3) as follows: "If the offense of driving while a determination as an habitual offender is in effect is a second or subsequent such offense, such person shall be punished as provided in subdivision 2 of this subsection, irrespective of whether the offense, of itself, endangers the life, limb, or property of another." Va. Code Ann. § 46.2-357(B)(3). "To establish a violation of that statute, the Commonwealth has to prove beyond a reasonable doubt that, at the time of an alleged driving offense, a defendant was adjudicated a habitual offender and his/her privilege to operate a motor vehicle was revoked." *Boone v. Commonwealth*, 758 S.E.2d 72, 77 (Va. App. 2014) (citation and quotation marks omitted). "The

statement that he could not be convicted of felony habitual offender driving because he was not convicted of being a habitual offender until December 23, 2013, and because he had no notice that he had been classified as a habitual offender prior to his arrest on December 8, 2013. Trial Tr. 7–8. The victim of the December 8, 2013 car accident testified that Stafford "T-boned" the passenger side of her car as he pulled out of an apartment complex, injuring her neck and back. *Id.* at 8–10.

Officer Arab testified that she responded to the accident, and that she decided to charge Stafford with felony-level habitual offender driving after checking his license status and a Virginia Department of Motor Vehicles ("DMV") transcript that stated he was a habitual offender and had received notice about the revocation. *Id.* at 13–15. Stafford's counsel objected to the DMV transcript, arguing that he did not "believe that transcript shows that he was statutorily served with notice that he was an habitual offender." *Id.* at 15–16. The court noted, and Stafford's counsel agreed, that Stafford was "not objecting to its admission," but was "objecting to the fact that it doesn't prove notice," and admitted the DMV transcript and the record of Stafford's December 23, 2013 conviction into evidence. *Id.* at 16.

Stafford's December 26, 2013 DMV transcript states that his license status was "revoked habitual offende[r]," and that he was convicted twice in 1988 and once in 1991 for "driving under revocation/suspension."[3]  CR14 R. at 194, 197 (capitalization altered). The transcript states, "Notice of suspension/revocation received," but not when or how Stafford received the notice. *Id.*

---

Commonwealth is also required to prove that the defendant received actual notice of his status as a habitual offender." *Id.* at n.3.

[3] The DMV transcript also reflects multiple other convictions and license suspensions. In particular, the vehicle-related convictions include driving on a suspended license on April 19, 2011, and improper equipment on March 15, 2011. CR14 R. at 194–96. Following these and other non-vehicle convictions and failures to pay courts costs and fines, Stafford's license was suspended on July 22, 2004, September 9, 2004, April 5, 2011, June 7, 2011, June 13, 2011, November 9, 2011, and September 20, 2012. *Id.*

at 194 (capitalization altered).  The transcript included a June 21, 1996 order of revocation addressed to Stafford from the DMV Commissioner, which states that DMV revoked Stafford's privilege to operate motor vehicles indefinitely because he was determined to be a habitual offender on June 18, 1996, due to three convictions for driving under a revoked or suspended license. *Id.* at 199.

Stafford's counsel moved to strike, on the ground that it had not been shown that Stafford "had any notice that he was adjudicated to be a habitual offender." Trial Tr. at 17. He also argued that the Commonwealth elevated the offense to a felony based on an improper *ex post facto* use of his December 23, 2013 habitual offender conviction, which occurred after the offense on trial. *Id.* at 18.  The Commonwealth responded that Stafford had notice that he was a habitual offender when he was issued a summons on October 4, 2013, two months before the offense at issue. *Id.* at 19. It also argued that the court could convict because Stafford's driving endangered life, limb, or property, because there was evidence of injury and property damage. *Id.* at 20.

The court denied the motion to strike, and denied Stafford's renewed motion to strike made on the same grounds. *Id.* at 20. The court found Stafford guilty of "felony driving after having been determined an habitual offender." *Id.* at 21. The court noted that "it can either be endangering property, which is clearly demonstrated," and "[i]t requires the defendant to have committed the offense previously, which the evidence shows he did in October, [two] months before this, and the Court finds that the defendant would have knowledge." *Id.*

On March 26, 2014, Stafford submitted a *pro se* letter to the clerk of the court regarding his habitual offender status. CR14 R. at 17. He stated that the officer who arrested him informed him that he was declared a habitual offender in 1996, and asked the court why he had not been

4

notified of that fact, because he had not received notice from the DMV and had not been "brought before the court to sign paperwork." *Id.* The clerk responded on the same date and suggested that he contact the DMV regarding the notice. *Id.* at 18.

On April 11, 2014, although represented by counsel, Stafford filed a *pro se* motion to strike and set aside the verdict. *Id.* at 20–23. He asserted that, during his trial, the judge found him guilty because he was on notice of being a habitual offender after he was stopped by police in October 2013. *Id.* at 20. Stafford argued that he could not be guilty because the Commonwealth did not establish that he had actual notice that he was a habitual offender at the time of his December 8, 2013 arrest, and that such actual notice was required by Va. Code Ann. § 46.2-357(C). *Id.* at 21. He further argued that constructive notice did not satisfy the statute, and moved to strike because he was never properly notified that he was a habitual offender. *Id.* at 21–22.

On April 24, 2014, the court denied Stafford's motion to set aside, because Stafford was represented by counsel and the court "will not address [the] motion *pro se*." *Id.* at 33.

The circuit court held a hearing on May 22, 2014, to address both the revocation of probation and the habitual driving offense. May 22, 2014 Hearing Transcript ("Hrg. Tr.") at 3–4. Regarding the revocation proceeding, *Commonwealth v. Stafford*, No. CR10-922-04 (Va. Cir. Ct. 2014) ("CR10 R."), Stafford admitted the violations of his probation conditions set forth in the violation reports and addenda.[4] *Id.* at 5–6.

---

[4] "CR10 R." refers to the paper record in *Commonwealth v. Stafford*, CR10-922-04, received from the Circuit Court of the City of Chesapeake under cover letter dated October 15, 2018, and consecutively paginated 1 through 49. The probation violations included failure to report to an employment assistance program and substance abuse treatment program in violation of condition 6, testing positive for use of cocaine in violation of condition 8, and new criminal charges in violation of condition 1, notably: (1) a conviction on December 10, 2013 in the Chesapeake General District Court for habitual offender driving (amended to operator's license suspended), for an offense that occurred on September 2, 2013; (2) a conviction on December 23, 2013, for

Stafford then testified on his own behalf. *Id.* at 6. Regarding the habitual offender driving conviction, he acknowledged that he was found guilty of felony habitual offender driving, that his counsel explained that charge to him after he "took some exception to that because of the notice issue," and, when asked if he understood that he "had been given notice when [he was] cited with a misdemeanor offense that preceded the felony," he responded that he "underst[ood] a little bit." *Id.* at 7.

On May 27, 2014, the circuit court entered an order sentencing Stafford to one year in prison for the felony driving while a habitual offender conviction, followed by two years of post-release supervision.[5] CR14 R. at 82–83.

**B.   The Court of Appeals of Virginia and the Supreme Court of Virginia upheld Stafford's habitual offender conviction on direct appeal.**

On June 9, 2014, Stafford, through counsel, filed a notice of appeal with the Court of Appeals of Virginia concerning only the habitual offender case, CR14-119. *Id.* at 84–85. On the same date, the circuit court clerk received a letter from Stafford, *pro se*, dated May 29, 2014, in which Stafford asked for a "reconsideration hearing." *Id.* at 88–89.

On July 7, 2014, Stafford filed another *pro se* letter with the circuit court, in which he mentioned both of his sentences, and asked the court to reduce his sentence for the probation

---

habitual offender driving, for an offense that occurred on October 4, 2013; and (3) the felony habitual offender driving conviction for the December 8, 2013 offense. CR10 at 19–20, 30.

[5] The court also found that Stafford violated the terms of probation that had been imposed for his grand larceny and larceny, third offense, charges in 2000, his larceny, third offense, in 2004, and his probation violations in 2001, 2004, 2010, and 2014. CR10 R. at 38–39. By order dated May 27, 2014, the court revoked Stafford's previously suspended sentences, and imposed a sentence of eight years and six months imprisonment, with no time suspended. *Id.* at 40. Stafford submitted *pro se* letters to the circuit court asking for mercy and a reconsideration hearing; the circuit court ultimately denied his request for a reconsideration on August 4, 2014. *Id.* at 41–43, 46, 48–49. Stafford did not further appeal the revocation of his suspended sentences or otherwise challenge the denial of his motion for reconsideration of the same.

revocation. *Id.* at 91–93. The court denied the request for a hearing on the motion to reconsider or modify the sentence by order dated July 10, 2014, because no facts were alleged to support a modification or reconsideration of the sentence imposed. *Id.* at 96. The court entered a similar order on July 24, 2014, again denying the request for reconsideration.[6] *Id.* at 99.

On November 26, 2014, the Court of Appeals of Virginia granted Stafford an appeal of his habitual offender case. *Id.* at 121. The sole assignment of error was that the circuit court erred by receiving and considering Stafford's DMV transcript, "because the exhibits did not prove when, if ever, [Stafford] received actual notice nor did it advise [him] what the consequences of another charge of habitual offender would be, for how long he would remain an habitual offender, and how his status could be remedied." CAV R. at 8.[7]

On April 7, 2015, the Court of Appeals issued an order finding no error and affirming the judgment of the circuit court. CR14 R. at 124; *Stafford v. Commonwealth*, 2015 WL 1526424, Record No. 1066-14-1 (Va. App. April 7, 2015). In its unpublished memorandum opinion of the same date, the Court of Appeals noted that Stafford's DMV transcript, admitted at trial, showed that he "was determined to be an habitual offender on June 21, 1996," his driver's license status was revoked as a habitual offender, and that "notice of suspension/revocation [was] received." *Id.* at 128–29 (capitalization altered). The court rejected Stafford's arguments that the DMV transcript

---

[6] The two orders did not identify the particular request for reconsideration addressed therein. Stafford sent two additional letters to the clerk in September 2014 regarding the imposition of two years of supervised release for his habitual offender conviction. *Id.* at 103, 109. The clerk advised him to contact his attorney regarding the interpretation of the order. *Id.* at 114–15.

[7] "CAV R." refers to the paper record from the Court of Appeals of Virginia in *Stafford v. Commonwealth*, Record No. 1066-14-1, received by this Court under cover letter dated September 24, 2018, and hand-numbered from 1 through 22. The petition for appeal alleged that the "court erred in not dismissing the charge, because the Commonwealth failed to prove that [Stafford] received actual notice of his status as an habitual offender." CAV Petition for Appeal at 6.

was improperly admitted and that differing zip codes for his address on the DMV documents proved he did not receive notice, because Stafford failed to preserve those arguments and had raised them for the first time at oral argument. *Id.* at 128 n.1. The court further noted that the Commissioner of the DMV was presumed to have followed the law at the time of the 1996 revocation regarding his duty to send notice of Stafford's habitual offender status to him via certified mail, and Stafford presented no evidence that the Commissioner failed in this duty. *Id.* at 129. Alternatively, the court noted that Stafford had, at the very least, actual notice of his habitual offender status on October 4, 2013, "when he was charged with his first offense of driving as an habitual offender in the Chesapeake General District Court," and he never disputed that status or that he had received notice of the same. *Id.* at 129–30.

Stafford appealed to the Supreme Court of Virginia on May 4, 2015. *Id.* at 131; SCV R. at 1.[8] Stafford alleged one assignment of error, arguing that the Court of Appeals erred in two ways: (1) by applying the wrong notice standard for a habitual offender charge, and (2) by referencing the "doctrine of regularity" for the first time, when that doctrine was not argued below and when the court did not address Stafford's argument about an incorrect zip code on the revocation order. SCV R. at 8. The Supreme Court of Virginia denied his appeal on November 12, 2015. *Id.* at 18.

## C. The state circuit court denied Stafford's habeas corpus petition regarding the habitual offender conviction because that issue was reviewed on direct appeal.

On October 26, 2016, Stafford filed a *pro se* petition for a writ of habeas corpus in the Circuit Court of the City of Chesapeake,[9] regarding his sentences for the habitual offender

---

[8] "SCV R." refers to the paper record from the Supreme Court of Virginia in *Stafford v. Commonwealth*, Record No. 150656, which is consecutively paginated from 1 through 18.

[9] "Habeas Cir. R." refers to the paper record from the circuit court in *Stafford v. Director, Virginia Department of Corrections*, Case No. CL16-2688, which is consecutively paginated from 1

conviction and the violation of probation. Habeas Cir. R. at 1–2. He alleged three grounds in support of his petition.

First, he asserted that the habitual offender statute provided for service of notice via certified mail, but he never signed for a certified mail notice. *Id.* at 4. He also claimed that the DMV commissioner sent him a letter dated November 16, 2015, stating that DMV was "awaiting a delivery status of the certify mail which was suppose to had been sent June 21, 1996." *Id.* at 4, 22. Second, he argued that constructive notice of his habitual offender status during the traffic stop on October 4, 2013, did not satisfy the requirements of Va. Code Ann. § 46.2-347 that he either be adjudicated a habitual offender in court or sign a certified letter that he had knowledge that he was a habitual offender. *Id.* Third, he alleged that he had not received the required "actual personal notice that one has been declared an habitual offender and ordered not to drive." *Id.* at 11. Stafford explained that he did not previously raise the argument regarding the letter from the DMV commissioner because he received that letter after his conviction and sentencing, and did not raise the other grounds because he "wasn't given a chance to speak on [his] own behalf" at trial. *Id.* at 5.

The Commonwealth filed a motion to dismiss Stafford's habeas petition. *Id.* at 32. It argued that Stafford's claims regarding his habitual offender conviction in CR14-119 were barred because the issue of adequate notice was raised and decided on direct appeal. *Id.* at 33–34.

On August 24, 2017, Stafford filed a motion to amend his habeas petition to add a claim for ineffective assistance of counsel, because he had conducted research which "indicat[ed] that his habeas corpus petition is incomplete and that the claims raised therein may be procedurally

---

through 76. Stafford also listed a one-year active sentence imposed in 2014 for the violation of probation in Norfolk, but did not provide grounds related to that conviction. Habeas Cir. R. at 2.

barred." *Id*. at 56. He stated that he "now understands that his claim[s] are more appropriately brought under ineffective assistance of counsel," and asked the court to decide "whether trial counsel rendered ineffective assistance in failing to present evidence at trial proving that petitioner was not given notice in any way shape or form that he was a habitual offender, as required by law." *Id*. at 56.

He argued that his counsel should have allowed him to testify at trial, and that he would have testified: (1) that he never received notice from the DMV that he was declared a habitual offender; (2) that the revocation order and DMV transcripts listed different zip codes for his address; (3) that the pre-sentence report showed that he was incarcerated from June 18 through July 1, 1996, during the time DMV claimed it sent the letter notifying him of his habitual offender status, and when he called people from jail to check if he received mail, "the answer was no;" and (4) that, in general district court, he disputed "his habitual offender status or that he had received notice of such determination on October 4, 2013 when he was charged with his first offense of driving as an habitual offender." *Id*. at 57–58.

On August 29, 2017, the circuit court entered an order denying Stafford's habeas petition. *Id*. at 61, 67. The circuit court found that his challenge to the habitual offender conviction, CR14-119, was barred from habeas review, "because the issue of whether Stafford had received adequate notice 'was raised and decided on direct appeal.'"[10] *Id*. at 62. The order did not explicitly address Stafford's motion to amend to include an ineffective assistance of counsel claim.

---

[10] The court also found that his challenge to the revocation, CR10-922-4, was untimely and procedurally defaulted. *Id*. at 63–64. It dismissed the petition with respect to the revocation in the Norfolk circuit court, CR11-920-2, because it lacked jurisdiction over that matter. *Id*. at 65–66.

**D.     The Supreme Court of Virginia refused Stafford's appeal of his habeas proceeding.**

Stafford appealed the denial of his habeas petition to the Supreme Court of Virginia. *Id.* at

70. In his *pro se* petition for appeal, filed on October 2, 2017, Stafford's sole assignment of error

was that the "trial court committed reversible error when it entered its final order without ruling

on petitioner's motion to amend raising ineffective assistance of counsel claim, and counsel was

ineffective." SCV Habeas R. 2.[11] He asserted that this error was "preserved . . . with the filing of

the motion to amend." *Id.* He largely repeated his arguments made in the circuit court habeas

proceeding regarding the testimony about his lack of notice that he would have presented if given

an opportunity at trial. *Id.* at 8–9.

The Supreme Court of Virginia refused his appeal by order dated June 12, 2018, because

"there is no reversible error in the judgment complained of." *Id.* at 14. The order did not address

the merits of Stafford's claims that the circuit court erroneously failed to rule on his motion to

amend or that his counsel was ineffective.

**E.     Stafford's Habeas Corpus Proceedings in this Court**

Stafford's pending federal petition was conditionally filed in this Court on June 29, 2018.[12]

ECF No. 1. On September 4, 2018, this Court granted his request to proceed *in forma pauperis*,

ECF No. 2, and ordered his petition filed. ECF No. 6. The sole ground alleged in his petition is

that his "trial counsel was ineffective for failing to present evidence at trial proving petitioner was

not given notice in any way shape or form that he was a habitual offender, as required by law."

---

[11] "SCV Habeas R." refers to the paper record in *Stafford v. Director of the Department of Corrections*, Record No. 171302, received by this Court from the Supreme Court of Virginia under cover letter dated October 9, 2018, and consecutively paginated from 1 through 14.

[12] The certificate of service states that the petition was placed in the prison mailing system on June 14, 2018. ECF No. 1 at 20.

ECF No. 1 at 5. He asserted that he raised ineffective assistance of counsel in his habeas proceeding in the Chesapeake circuit court. *Id.*

On September 24, 2018, respondent filed an answer to the petition pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts and a motion to dismiss the petition, along with a supporting memorandum.[13] ECF Nos. 9–11. Respondent argues that the ineffective assistance claim is not exhausted and is defaulted because it was not raised in the original habeas petition and would now be barred as untimely and successive under Va. Code Ann. §§ 8.01-654(A)(2) and -654(B)(2). ECF No. 11 at 3. He asserts that Stafford did not seek leave to amend his state habeas petition to include the current claim of ineffective assistance of counsel until nine months after the statutory deadline to do so, and the ineffective assistance claim was a new claim that does not relate back to his initial filing for statute of limitations purposes. *Id.* at 5–6.

Respondent further contends that Stafford's appeal in the habeas proceeding did not address his ineffective assistance of counsel claim, but rather asserted that the circuit court erred by not ruling on his motion to amend, which is a matter of state law that does not support habeas relief. *Id.* at 6–7. He also argues that the petition is untimely, because Stafford did not include the ineffective assistance claim in his state habeas proceeding and the statute of limitations for that claim was therefore not tolled during that proceeding, and his motion to amend to include the ineffective assistance claim came after the deadline to raise it. *Id.* at 8–10.

On October 15, 2018, Stafford filed a response to the motion to dismiss. ECF No. 13. He asserted that his current habeas petition was timely filed, because the pendency of his state habeas

---

[13] The motion to dismiss included a separately filed notice, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), and Local Rule 7(K), providing Stafford with notice of how to timely respond thereto and the potential consequences for failing to do so. ECF No. 12.

proceeding tolled the federal statute of limitations. *Id.* at 1. He agreed that he had not raised the ineffective assistance claim in his initial state habeas petition, but argued that he could establish cause for the procedural default of a habeas claim of ineffective assistance of trial counsel pursuant to *Martinez v. Ryan*, 566 U.S. 1 (2012). *Id.* at 1–2. Specifically, he asserted that he satisfied the first prong of *Martinez* because he had no counsel in the state habeas proceeding, and that the court must determine whether he satisfied the second prong, which is that his claim is "substantial" because it "has some merit," and that such a determination in his favor would allow the Court to review the merits of his claim. *Id.* at 2.

In support of his argument that his ineffective assistance claim is substantial and has merit, Stafford asserts that he has evidence to disprove the state's claims that he had notice that he was a habitual offender either because of the 1996 revocation order or the October 4, 2013 misdemeanor charge. *Id.* at 2–3. Concerning the revocation order, he claims that he never received a certified letter from the DMV notifying him that he was declared a habitual offender, he was incarcerated at the time DMV purportedly sent such a letter, and DMV acknowledged that it was awaiting a delivery status for the certified letter. *Id.* at 2, 4–5, 8–10. He contends that constructive notice resulting from his misdemeanor offense is insufficient, because: (1) he was not convicted of being a habitual offender until December 23, 2013, after the offense at issue; and (2) "the summons at best advised [him] that he was an habitual offender at the time of that offense [October 4, 2013]" but did not prohibit him from driving prospectively or inform him what habitual offender status meant. *Id.* at 3–4 (citing *Rose v. Commonwealth*, 578 S.E.2d 758, 760–61 (Va. 2003)).

Stafford concludes that his counsel was ineffective, because it was "counsel['s] duty to speak for me and he never made any of these points to show the court I never received notice," and the outcome could have been different if his counsel had argued these points. *Id.* at 6. He

13

further notes that he "never did challenge the revocation [judgment], so there is no need to address the claim the respondent is talking about." *Id*.

## II.  ANALYSIS

### A.  Stafford's federal habeas petition is not barred by the statute of limitations.

Pursuant to 28 U.S.C. § 2244(d), a one-year statute of limitations applies to federal habeas petitions brought by state prisoners:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> . . . .
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)(A), (d)(2).

Stafford's habitual offender conviction became final on February 10, 2016, when he did not file a petition for a writ of certiorari to the Supreme Court of the United States within 90 days of the November 12, 2015 order denying his petition for appeal to the Supreme Court of Virginia. Sup. Ct. R. 13(1); *Wall v. Kholi*, 562 U.S. 545, 548 (2011) (noting that a "conviction became final on direct review when [a habeas petitioner's] time expired for filing a petition for a writ of certiorari in this Court"). This date is not within one year of Stafford's filing his federal habeas petition on June 29, 2018. This Court must determine whether the one-year limitations period was tolled during Stafford's state habeas proceeding.

Here, the operative requirement of the tolling provision in 28 U.S.C. § 2244(d)(2) is the pendency of a "properly filed application for State post-conviction or other collateral review with

respect to the pertinent judgment or claim." "Properly filed" means that the petitioner complied with state filing conditions, such as time limits to file the collateral review matter. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (explaining that an "application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings," which "usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee"). There is no dispute that Stafford's state habeas petition was properly filed, insofar as it complied with applicable state laws and rules regarding filing.

Respondent asserts, however, that tolling does not apply because Stafford's state habeas petition did not include the ineffective assistance claim he pursues in this Court. ECF No. 11 at 8–10. Respondent cites several cases to support this claim, but those cases do not directly confront this issue, and the Fourth Circuit has not addressed it.[14] The one-year limitations period that runs

---

[14] Respondent cited six cases to support his contention that the "statute of limitations is specific to each claim in a federal habeas petition," but several of those cases concerned the other provisions for the start of the one-year statute of limitations in 28 U.S.C. § 2244(d)(1), rather than the calculation from the date the judgment became final provided in § 2244(d)(1)(A), while others involve a combination of timely and untimely claims in one petition. These cases focus on analyzing claims individually so that a timely claim would not reopen the door to assert untimely claims filed in the same federal petition, but they did not address the potential issue here of whether a state habeas application tolls the federal statute of limitations when the state habeas application does not assert the same basis for habeas relief as the federal petition. ECF No. 11 at 9–10 n.4. *See Zack v. Tucker*, 704 F.3d 917, 926 (11th Cir. 2013) (holding, in a case involving the date when a constitutional right was initially recognized by the Supreme Court under § 2244(d)(1)(C), that the "statute of limitations in AEDPA applies on a claim-by-claim basis in a multiple trigger date case"); *Prendergast v. Clements*, 699 F.3d 1182, 1186–88 (10th Cir. 2012) (concluding that timely filed but unexhausted claims related to petitioner's resentencing did not toll the statute of limitations for untimely claims related to petitioner's original conviction); *Mardesich v. Cate*, 668 F.3d 1164, 166, 1170–74 (9th Cir. 2012) (analyzing claims individually to conclude that claims based on a state parole board's denial were untimely, because petitioner's claims were filed nearly 18 months after the statute of limitations expired as calculated from the date of the board's denial, which was the factual predicate that could be discovered to trigger the running of the limitations period in § 2244(d)(1)(D)); *Souliotes v. Evans*, 622 F.3d 1173, 1179–80 (9th Cir. 2010) (analyzing statute of limitations separately for individual claims) (*vacated on other grounds, Souliotes v.*

from a final judgment under 28 U.S.C. § 2244(d)(1)(A) is tolled for the pendency of a "properly

filed *application*" for state "collateral review with respect to the pertinent judgment *or* claim."   28

U.S.C. § 2244(d)(2) (emphases added).   As the Third Circuit has held:

> under § 2244(d)(2), a properly filed state post-conviction proceeding challenging
> the judgment tolls the AEDPA statute of limitations during the pendency of the
> state proceeding.  Whether the federal habeas petition contains one or more of the
> claims raised in the state proceeding does not matter as long as the state proceeding
> and the federal habeas petition attack the same judgment.

*Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also, e.g., Carter v. Litscher*, 275 F.3d

663, 665 (7th Cir. 2001) (rejecting the Sixth Circuit's claim-based approach to the tolling provision

in *Austin v. Mitchell*, 200 F.3d 391 (6th Cir. 1999), because it "reads the word 'judgment' out of

§ 2244(d)(2) and tolls the time only while a particular 'claim' (which *Austin* took to mean 'theory

of relief') is before the state court").

   The Court, therefore, looks to the dates that the state application for collateral review (the

state habeas petition) was pending, without inquiring into the particular claims contained (or

omitted) therein.[15]

---

*Evans*, 654 F.3d 902 (9th Cir. 2011)); *Bachman v. Bagley*, 487 F.3d 979, 982–85 (6th Cir. 2007)
(finding that a later adjudication as a sexual predator did not reopen earlier judgment and
conviction to restart limitations period under § 2244(d)(1)(A)); *Fielder v. Varner*, 379 F.3d 113,
116–22 (3rd Cir. 2004) (separately analyzing timeliness of two claims for relief based on after-
discovered evidence under § 2244(d)(1)(D)).

[15] Without expressly deciding this issue, the Supreme Court has distinguished the provisions of 28
U.S.C. § 2244(d) that focus on claims and (d)(1)(A), which focuses on the application and final
judgment:

Stafford's state habeas application was filed on October 26, 2016, 259 days after his habitual offender conviction became final on February 10, 2016. The circuit court denied his state habeas petition, and he appealed to the Supreme Court of Virginia, which refused his appeal on June 12, 2018. Stafford filed his federal habeas petition 17 days later, on June 29, 2018. In total, not counting the tolled periods when his state habeas petition and the appeal thereof were pending in Virginia courts, 276 days elapsed between the date his habitual offender conviction became final and when he filed the current federal habeas petition. His one-year statute of limitations accordingly did not expire before he filed his habeas petition, and this action is not barred by 28 U.S.C. § 2244(d).

**B.** **Stafford did not exhaust his ineffective assistance of counsel claim in state court, and would now be procedurally barred from pursuing that claim in state court, so this Court cannot reach the merits of his habeas petition because no exception to the exhaustion and procedural default doctrines applies.**

Before addressing the merits of the habeas petition, the Court must confirm that Stafford exhausted his remedies in state court, *see* 28 U.S.C. § 2254(b), and that the claims were not procedurally defaulted in state court. *See Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998). A federal habeas claim is not exhausted if it has not been fairly presented to a state court, and such a claim is procedurally defaulted if the habeas petitioner would be procedurally barred from presenting the claim in state court. *See Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000).

---

Similarly, § 2244(d)(1) provides that a "1-year period of limitation shall apply to an *application* for a writ of habeas corpus." (Emphasis added.) The subsection then provides one means of calculating the limitation with regard to the "application" as a whole, § 2244(d)(1)(A) (date of final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate).

*Pace*, 544 U.S. at 416 n.6.

17

1.   **Stafford did not exhaust his ineffective assistance claim because it was
     not fairly presented to the state courts.**

A federal court cannot grant a writ of habeas corpus to a person in custody pursuant to a

state court judgment unless that person "has exhausted the remedies available in the courts of the

State." 28 U.S.C. § 2254(b)(1)(A). Such a habeas petitioner "shall not be deemed to have

exhausted the remedies available in the courts of the State . . . if he has the right under the law of

the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The

exhaustion doctrine in 28 U.S.C. § 2254 is based on the doctrine of comity and is "designed to

protect the state courts' role in the enforcement of federal law and prevent disruption of state

judicial proceedings" by "allowing the State an initial opportunity to pass upon and correct alleged

violations of prisoners' federal rights." *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (citation and

quotation marks omitted). The exhaustion requirement also serves a pragmatic purpose, because

"federal claims that have been fully exhausted in state courts will more often be accompanied by

a complete factual record to aid the federal courts in their review." *Id.* at 519.

The "exhaustion requirement is satisfied so long as a claim has been 'fairly presented' to

the state courts." *Baker*, 220 F.3d at 288. "Because the exhaustion doctrine is designed to give

the state courts a full and fair opportunity to resolve federal constitutional claims before those

claims are presented to the federal courts, we conclude that state prisoners must give the state

courts one full opportunity to resolve any constitutional issues by invoking one complete round of

the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845

(1999).

Fair presentation does not mean that a petitioner must "'cit[e] book and verse on the federal

constitution,'" but it does "mandate[] that the federal claim be presented face-up and squarely. . . .

Oblique references which hint that a theory may be lurking in the woodwork will not suffice."

*Baker*, 220 F.3d at 289 (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971); other citations and quotation marks omitted). "[B]oth the operative facts and the controlling legal principles must be presented to the state court." *Id.* (citation and quotation marks omitted). Courts consider a claim as exhausted if the state courts have "actually passed upon the claim," or if the state courts "ignored (and therefore impliedly rejected)" a claim that was presented as a matter of right. *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

If there is any doubt regarding whether an issue was presented to the state court, such doubt "should be resolved against exhaustion, save in the exceptional case" involving a "compelling necessity for final decision that, unless vindication of the petitioner's rights was promptly given they would be lost," such as when the petitioner is "presently or within the immediate future[] subject to release." *Durkin v. Davis*, 538 F.2d 1037, 1042 (4th Cir. 1976); *see also Clem v. Fleming*, 664 F. App'x 272, 275 (4th Cir. 2016) ("Moreover, we generally resolve doubts as to whether an issue has been presented to a state court against exhaustion.").

Here, Stafford's sole ground for federal habeas relief is ineffective assistance of his trial counsel. Under Virginia law, such a claim "must be asserted in a habeas corpus proceeding and [is] not cognizable on direct appeal." *Lenz v. Commonwealth*, 544 S.E.2d 299, 304 (Va. 2001). Accordingly, this Court examines Stafford's state habeas proceedings to determine whether he fairly presented his ineffective assistance of counsel claim to the state courts and so exhausted his state remedies before proceeding with this matter. As explained below, Stafford failed to exhaust his ineffective assistance of counsel claim.

When Stafford filed his petition for a writ of habeas corpus in the Chesapeake circuit court on October 26, 2016, he only alleged that DMV did not comply with notice requirements for his habitual offender status in 1996 and that constructive notice of that status acquired during the

October 4, 2013 traffic stop did not satisfy the felony habitual offender statute. He did not assert any claim based on ineffective assistance of counsel until he filed his motion to amend the petition on August 24, 2017, nearly ten months later. He essentially alleged that his counsel was ineffective because he did not allow Stafford to present testimony about insufficient notice of his habitual offender status. Five days after the motion to amend was filed, the circuit court entered an order denying Stafford's habeas petition without addressing his motion to amend or the merits of his ineffective assistance claim. The Supreme Court of Virginia also did not address Stafford's ineffective assistance claim when it denied his appeal in his state habeas case.

Because the circuit court did not grant Stafford leave to amend his petition to include an ineffective assistance claim, the Virginia courts did not have a "full and fair opportunity" to address that claim. *See, e.g., Cartera v. Mitchell*, 553 F. Supp. 866, 870–71 (E.D. Va. 1982) (concluding that a petitioner's ineffective assistance claims were not exhausted, because they were asserted on direct appeal and such claims are not cognizable on appeal, so those claims were not presented to the state court "in a cognizable form," and the "state has not had a fair opportunity to pass on petitioner's claims; nor has petitioner had a full and fair opportunity to litigate his claims in state court"). Indeed, without obtaining leave to amend his petition, Stafford's ineffective assistance claim was not properly before the circuit court, and that court could not have passed on the merits of that claim without granting leave to amend. *See, e.g., Ahari v. Morrison*, 654 S.E.2d 891, 892–93 (Va. 2008) (concluding that "an amended complaint is not deemed filed, and is thus without legal efficacy, until a trial court grants leave to amend," because Rule 1:8 of the Rules of the Supreme Court of Virginia states: "'No amendments shall be made to any pleading after it is filed save by leave of court'").

Accordingly, Stafford's ineffective assistance claim was not presented to the circuit court in his habeas proceeding, and was therefore also not presented to the Supreme Court of Virginia. Because the ineffective assistance claim was not presented to Virginia's highest court and that court did not have a full and fair opportunity to resolve it, Stafford has not exhausted the only claim alleged in his federal habeas petition.

**2.    Stafford's ineffective assistance claim would now be procedurally barred in state court.**

"A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court." *Baker*, 220 F.3d at 288.

Here, Stafford's ineffective assistance claim would be procedurally barred as untimely under Virginia law. Virginia Code Ann. § 8.01-654(A)(2) provides that a petition for habeas corpus "attacking a criminal conviction or sentence, except [in death penalty cases], shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later."

The ineffective assistance claim in this case allegedly arose in connection with Stafford's conviction for habitual offender driving, so the two-year statute of limitations applies to that claim. Two years from the May 27, 2014 final judgment in the trial court is May 27, 2016, and one year from the Supreme Court of Virginia's November 12, 2015 order denying his direct appeal is November 12, 2016. Stafford did not present a habeas claim based on ineffective assistance of counsel before the expiration of these deadlines. Although he filed his state habeas petition before November 12, 2016, he did not attempt to amend that petition to include an ineffective assistance claim until August 24, 2017, months after the deadline to present that claim.

Thus, Stafford's ineffective assistance of counsel claim can be treated as exhausted because it would be procedurally barred under state law if he attempted to present it to the state court. *Baker*, 220 F.3d at 288. "[T]he procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default." *Id.* (citation and quotation marks omitted). As discussed below, Stafford has not demonstrated cause and prejudice for the default, and no exception applies to allow review of his habeas claim in this Court.

> **3.     Stafford has not established that an exception applies that would allow this Court to review his habeas petition, because he has not established a substantial ineffective assistance of counsel claim.**

Under the procedural default doctrine, "a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Martinez*, 566 U.S. at 9. "A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed." *Id.* For example, a federal habeas claim is procedurally defaulted if the petitioner "would now be procedurally barred from presenting the claim in state court," which is determined based on state law regarding the waiver of alleged errors. *Baker*, 220 F.3d at 289–90. As noted above, Stafford's ineffective assistance of counsel claim would be procedurally barred in state court under Virginia's habeas statute of limitations, Virginia Code Ann. § 8.01-654.

There are, however, exceptions to the procedural default doctrine. As relevant here, a prisoner "may obtain federal review of a defaulted claim by showing cause for the default and

prejudice from a violation of federal law."[16] *Martinez*, 566 U.S. at 10 ("Thus, a federal court can

hear [petitioner's] ineffective-assistance claim only if he can establish cause to excuse the

procedural default."). The Supreme Court concluded in *Martinez* that, "[w]here, under state law,

claims of ineffective assistance of trial counsel must be raised in an initial-review collateral

proceeding, a procedural default will not bar a federal habeas court from hearing a substantial

claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no

counsel or counsel in that proceeding was ineffective." *Id*. at 17. Accordingly,

> when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel
> claim in a collateral proceeding, a prisoner may establish cause for a default of an
> ineffective-assistance claim in two circumstances. The first is where the state
> courts did not appoint counsel in the initial-review collateral proceeding for a claim
> of ineffective assistance at trial. The second is where appointed counsel in the
> initial-review collateral proceeding, where the claim should have been raised, was
> ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984).
> To overcome the default, a prisoner must also demonstrate that the underlying
> ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say
> that the prisoner must demonstrate that the claim has some merit.

*Id*. at 14.

The Supreme Court further explained in *Martinez* that a "finding of cause and prejudice

does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits

of a claim that otherwise would have been procedurally defaulted." *Id*. at 17.

Similarly, the Court of Appeals for the Fourth Circuit explained that "[g]enerally, a federal

court may not consider claims that a petitioner failed to raise at the time and in the manner required

under state law," but an exception for ineffective assistance claims exists where

> (1) the ineffective-assistance-of-trial-counsel claim is a substantial one; (2) the
> cause for default consist[s] of there being no counsel or only ineffective counsel

---

[16] Another exception exists "for cases in which a compelling showing of actual innocence enables
a federal court to consider the merits of a petitioner's otherwise defaulted claims." *Teleguz v.
Zook*, 806 F.3d 803, 807 (4th Cir. 2015). No actual innocence claim is asserted here, so this
potential exception does not apply.

> during the state collateral review proceeding; (3) the state collateral review
> proceeding was the initial review proceeding in respect to the ineffective-
> assistance-of-trial-counsel claim; and (4) state law requires that an ineffective
> assistance claim be raised in an initial-review collateral proceeding.

*Teleguz v. Zook*, 806 F.3d 803, 807–08 (4th Cir. 2015) (citation and quotation marks omitted).

Here, the final three components of this exception are established. Stafford had no counsel during the state collateral review proceeding (factor 2), the state collateral review/habeas proceeding was the initial review of his claim based on the ineffective assistance of trial counsel (factor 3), and, under *Lenz*, 544 S.E.2d at 304, Virginia law requires that such an ineffective assistance of trial counsel claim be raised in a collateral proceeding (factor 4). This Court must determine whether the ineffective assistance claim is "substantial" such that the first factor for this exception is established; only if this exception is established can the Court review the merits of Stafford's habeas claim. *Teleguz*, 806 F.3d at 808.

The showing that an ineffective assistance claim is "substantial" and has "merit" means that the petitioner

> must make a "substantial' showing with respect to both counsel's competency
> (first-prong *Strickland* ) and prejudice (second-prong *Strickland*). As to the specific
> elements of the ineffective assistance claim, a petitioner must make a substantial
> showing of incompetency, i.e., "that counsel made errors so serious that counsel
> was not functioning as the counsel guaranteed . . . by the Sixth Amendment."
> Further, the petitioner must make a substantial showing that "counsel's errors were
> so serious as to deprive the defendant of a fair trial, a trial whose result is reliable,"
> i.e., that there was "a substantial, not just conceivable, likelihood of a different
> result."

*Id.* at 815 (citations and quotation marks omitted).

The applicable standard in *Strickland* requires a petitioner to show that his defense counsel provided assistance that (1) fell below an objective standard of reasonableness, and (2) prejudiced petitioner as a result. *Strickland*, 466 U.S. at 687–96.

24

To establish that counsel's performance fell below an objective standard of reasonableness, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  In doing so, petitioner must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689).

To establish prejudice, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  This requires petitioner to establish "probability sufficient to undermine confidence in the outcome," rather than a mere showing that "the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693–94.  A federal habeas court need not address both performance and prejudice if the defendant makes an insufficient showing on either one. *Id.* at 697.

Here, Stafford has not made a substantial showing that his trial counsel's performance satisfied either prong of *Strickland*, so he has not established an exception to the exhaustion and procedural default doctrines that would allow this Court to reach the merits of his claim.

Regarding the performance prong, trial counsel repeatedly asserted in his opening statement, objections to the DMV transcript, and motion to strike that Stafford had not received the statutory notice required to charge or convict him of felony habitual offender driving.  In doing so, he presented the Chesapeake circuit court with the same core issue at the heart of Stafford's ineffective assistance claim:  whether Stafford either received the 1996 revocation notice or received sufficient notice from his October 4, 2013 traffic stop.

25

Stafford's ineffective assistance claim revolves around his assertion that his counsel was ineffective because he failed to call Stafford to testify that he lacked notice of the habitual offender status. However, his counsel had several strategic reasons not to call Stafford. First, if Stafford testified, it would likely have allowed the prosecutor to draw greater attention to his significant criminal record, including felony larceny, and history of driving offenses and probation revocations. Second, the prosecutor could have undermined Stafford's claim that he lacked notice of his habitual offender status by pointing out that he not only received a summons for habitual offender driving in the October 4, 2013 traffic stop, but that he also received a similar summons during a traffic stop on September 2, 2013 (that was later amended to driving after his license was suspended). CR10 R. at 19. Third, the circuit court as trier of fact would not have been bound by Stafford's self-serving testimony that he did not receive notice of his habitual offender status at any time in the decade and more since the 1996 revocation. *See, e.g.*, *Tirado v. Commonwealth*, 817 S.E.2d 309, 317 (Va. 2018) (noting that the "circuit court was not bound to accept [the defendant's] self-serving testimony at trial"). On this record, the Court cannot conclude that trial counsel's strategy to challenge the notice of habitual offender status while avoiding testimony by Stafford was outside the range of reasonable professional assistance.

Nor has Stafford made a substantial showing that he suffered prejudice, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Even if trial counsel erred by not presenting Stafford's testimony, it is unlikely that the outcome would have been different. The Court of Appeals of Virginia affirmed the habitual offender conviction based on the revocation notice in 1996 and actual notice from the October 4, 2013 traffic stop. Stafford's self-serving proposed testimony that he did not receive the revocation notice would not likely alter the finding

26

that he had received notice. Even assuming that such testimony would have persuaded the trial court that Stafford did not receive notice from the DMV in 1996, however, the appellate court determined that the actual notice in the October 2013 traffic stop satisfied the elements of the felony habitual offender statute. The 2013 stop alone would be sufficient to convict, and Stafford's testimony would not change that result.

Accordingly, Stafford has not demonstrated that the exception to the procedural default and exhaustion requirements applies in his case, because his ineffective assistance of counsel claim is not substantial and lacks merit. Because he has not exhausted his ineffective assistance claim and that claim would now be procedurally barred, his habeas petition should be dismissed.

## III.   RECOMMENDATION

For the foregoing reasons, the Court **RECOMMENDS** that respondent's motion to dismiss, ECF No. 9, be **GRANTED**, and the petition for a writ of habeas corpus, ECF No. 1, be **DENIED** and **DISMISSED WITH PREJUDICE**.

## IV.   REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.      Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

_____/s/_____

Robert J. Krask
United States Magistrate Judge

Robert J. Krask
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
April 3, 2019

28